141 So. 260

## SCOTT v. STATE.
### 8 Div. 449.

Court of Appeals of Alabama.
Feb. 16, 1932.

Rehearing Denied March 22, 1932.

Henry D. Jones, of Florence, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

RICE, J.

There was a "Holy Roller" meeting in progress, in the yard of John Engle. Said meeting had been held from night to night, for some time. On one of these nights John Engle had a part in some trouble with a son of John Scott—perhaps striking said son with a stick.

At any rate, on the night here in question, which is the one immediately following that when John Engle was said to have struck the said son of John Scott, said John Scott and his three sons, Johnnie, Hardie (the one said to have been struck by John Engle, the night before), and Harvey (this appellant), attended, with still another Scott, a relative, the "Holy Roller" meeting—coming together.

Upon arrival—the meeting being already under way, being held, as aforesaid, in John Engle's yard, by the light of whatever stars there were, aided by one or two kerosene lamps—John Scott, the father, immediately approached John Engle, who was in the yard, on the outskirts, as it were, of the gathering, and accosted him about his having struck Hardie Scott the night before. One word followed another, briefly, but rapidly; the culmination being, in the language of one witness, at least, that John Engle "hauled off and knocked old man Scott down." Immediately, the Kellars came into action, by Johnnie Kellar's catching hold of old man Scott (the father), and, according to some of the witnesses, undertaking to "hold his wrists," to keep him from shooting a pistol which he had. For the next few moments "chaos umpire sat," and by "decision (if he made any) more embroiled the fray." However it all was, there seems no doubt that there was a sort of "free for all" fight among Engle, the Scotts, and the Kellars, with clubbing, cutting, stabbing, and shooting, frightfully in evidence; at least a part of the net result of which being that, when, in a short time, it was all over, John Engle and Johnnie Kellar lay dead, or dying.

Hardie and Harvey Scott were each, separately, indicted for the murder of Johnnie Kellar, and, by agreement, were jointly tried; Hardie Scott being acquitted, and Harvey Scott being convicted of the offense of manslaughter in the first degree, and sentenced to serve imprisonment in the penitentiary for the term of two years.

The above—but sketchy, it is true—outline of the facts shown in evidence will make it apparent that there is no merit in the exceptions reserved to those rulings of the court permitting testimony as to the movements, statements, actions, etc., of the several members of the Scott party (consisting of the father and his three sons named) during the afternoon and evening immediately preceding the fight described above. All these things were admissible—they showing on their face a relevancy thereto—as evidence tending to compose a link, or links, in a chain of circumstances tending to support the theory that there was a conspiracy among the said Scotts to wreak vengeance on John Engle, at the Holy Roller meeting, that night, for a wrong he was thought to have done Hardie Scott. Robinson v. State, 222 Ala. 541, 133 So. 578.

Moreover, the rulings mentioned could not have worked prejudice to this appellant's cause, for the reason that the testimony—and all the testimony—upon which his conviction was had, was direct and positive, as contradistinguished from circumstantial, because of his participation in any conspiracy, to the effect that he, without cause, or adequate provocation, clubbed or shot, or clubbed and shot, Johnnie Kellar to death.

In the state of the evidence in the bill of exceptions, written charges requested by and

refused to appellant, bearing upon his guilt, vel non, as depending upon principles of law applicable to one charged with crime as a co-conspirator, etc., were abstract.

We have examined every exception reserved on the taking of testimony, but there seems no ruling involved worthy of specific mention. Each of them is obviously, if not technically correct, certainly not infected with error of a prejudicial nature.

Appellant appears to have had a fair trial, and while, with his counsel, we may agree that the sociological condition of affairs, in the locality, in our state, where the fight in question occurred, as reflected by the evidence in the case, is deplorable, yet that is not a matter that can address itself to us in our instant capacity.

Finding, nowhere, prejudicial error, the judgment of conviction is affirmed.

Affirmed.